SUPREME LODGE, A. O. U. W., v. GRAND LODGE, A. O. U. W., OF THE STATE OF MINNESOTA et al.

(Circuit Court of Appeals, Eighth Circuit. April 1, 1914.)

No. 4060.

INSURANCE (§ 697*)—FRATERNAL INSURANCE—SUPREME AND GRAND LODGES—ACCOUNTING FOR FUNDS.

The articles of incorporation of the Grand Lodge of the Ancient Order of United Workmen of the State of Minnesota, adopted in 1902, provided that all of its powers pertaining to the welfare of the order were subject to the supervisory control of the Supreme Lodge of the Ancient Order of United Workmen, by which it was instituted. The Supreme Lodge had created an emergency fund, known as the guaranty fund, and afterward as the fraternal aid fund, into which was to be paid an amount equal to an assessment of 15 cents per month on each member of the order, and where there were separate beneficiary jurisdictions, as in Minnesota, the Grand Lodges of such jurisdictions were required to pay over the amount of such assessments on their membership semiannually. The constitution of the Grand Lodge of Minnesota provided for a beneficiary fund, to be created by assessments and to be used solely for the payment of death claims and guaranty fund assessments to the Supreme Lodge. Such assessments were paid for several years, but in 1911 the Grand Lodge severed its connection with the Supreme Lodge, not having paid the guaranty assessment for some years previously. Its officers had, however, during such time transferred from its beneficiary fund to a newly created emergency fund the sum of about $96,000, which had been invested and was still on hand. *Held* that, under its constitution, the beneficiary fund was charged with the payment pro rata of death claims and guaranty or fraternal aid fund claims; that the Supreme Lodge was entitled to an accounting with respect to such fund and, all death claims having been paid, to impress a trust on the $96,000 and its increase and any other sums which had been diverted therefrom, in favor of its guaranty and fraternal aid fund claims.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1838; Dec. Dig. § 697.*]

Appeal from the District Court of the United States for the District of Minnesota; Charles A. Willard, Judge.

Suit in equity by the Supreme Lodge, Ancient Order of United Workmen, against the Grand Lodge, Ancient Order of United Workmen of the State of Minnesota, and others. Decree for defendants, and complainant appeals. Reversed.

George W. Winstead, of St. Louis, Mo., and Edmund S. Durment, of St. Paul, Minn. (Fred C. Wetmore, of Grand Rapids, Mich., and Albert R. Moore and Wm. H. Oppenheimer, both of St. Paul, Minn., on the brief), for appellant.

F. A. Duxbury, of Caledonia, Minn., and W. B. Anderson, of Minneapolis, Minn. (M. C. Tifft, of Minneapolis, Minn., on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and RINER, District Judge.

CARLAND, Circuit Judge. Supreme Lodge, Ancient Order of United Workmen, hereafter called Supreme Lodge, brought this action

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

against the Grand Lodge, Ancient Order of United Workmen of the State of Minnesota, hereafter called Grand Lodge, for an accounting as to all moneys collected and received by the latter for the use and benefit of the former with reference to a guaranty and fraternal aid fund, and a per capita tax, and judgment for the amount found to be due. The Grand Lodge denied liability, and on final hearing the bill was dismissed for the reason that it did not appear that the Grand Lodge had established any such funds or collected any money for said funds to which the Supreme Lodge had any claim. The facts which condition the liability of the Grand Lodge to the Supreme Lodge are as follows:

The Supreme Lodge is a fraternal beneficial society, incorporated under the laws of Texas. The Grand Lodge is a fraternal beneficial society, incorporated under the laws of Minnesota. Prior to January 24, 1877, the Supreme Lodge caused to be organized subordinate lodges, having more than 2,000 members, in the State of Minnesota, and on or about March 15, 1878, the Supreme Lodge, in accordance with its constitution, laws, rules, and regulations, set apart the Grand Lodge as a separate beneficiary jurisdiction. The Grand Lodge continued as a separate beneficiary jurisdiction and carried on its business as a voluntary unincorporated beneficiary association until the year 1902, when it was incorporated under the laws of Minnesota. Since said time, when the Grand Lodge was so set apart as a separate beneficiary jurisdiction, the Supreme Lodge has also conducted a beneficiary jurisdiction distinct and separate from the beneficiary business of the Grand Lodge.

Since the Grand Lodge was set apart as a separate beneficiary jurisdiction, it has organized within the state of Minnesota more than 260 subordinate lodges with a membership of over 20,000, and during such time no subordinate lodge has been organized within the state of Minnesota except those organized by the Grand Lodge. During all of said time the Grand Lodge has, in accordance with its constitution and laws and articles of incorporation, determined the necessity for and number of beneficiary assessments to be levied upon the members within the jurisdiction of the Grand Lodge, and the amount of money required for the payment of claims against the beneficiary fund of said lodge, the form and sufficiency of proofs of death of members of said lodge, allowance and payment of claims against the beneficiary fund and against the general fund of said lodge, the necessity for and the amount of money to be expended in promoting the interest of the Grand Lodge and extending its membership in the state of Minnesota, and in general has conducted its business affairs as seemed best to the Grand Lodge and its officers.

The Grand Lodge since its organization has sent representatives to and has been represented in each session of the Supreme Lodge, as provided in the constitution and laws of the Supreme Lodge and Grand Lodge, until and including the session of said Supreme Lodge held in December, 1910.

At the session of said Grand Lodge held in February, 1911, it adopted a resolution that it should at once sever all connection with said Supreme Lodge and directed its committee on laws to prepare and

submit amendments to its Grand Lodge constitution and its certificate of incorporation to carry the resolution into full force and effect. Pursuant to the resolution such amendments were submitted and adopted.

The articles of incorporation of the Grand Lodge contain the following certificate:

"This is to certify, that, pursuant to the provisions of chapter 2 of the General Laws of the state of Minnesota, for A. D. 1901, the Grand Lodge of the Ancient Order of United Workmen of the State of Minnesota, heretofore instituted and authorized in the state of Minnesota under the authority of the Supreme Lodge of the Ancient Order of United Workmen, and now located in said state, desiring to become a body corporate, and having so determined by a two-thirds vote of all its members present and voting thereon at a regular meeting of the same convened and in session at the city of St. Paul, in said state, on the 18th, 19th, 20th and 21st days of February, A. D. 1902, and having by the same vote at the same meeting adopted and caused to be prepared this certificate, to that end doth further certify:

"First. The name under which this body was instituted and chartered by the Supreme Lodge of the Ancient Order of United Workmen, which shall also be its corporate name as provided by said act, was 'the Grand Lodge of the Ancient Order of United Workmen of the State of Minnesota.'

"Second. The date this body was instituted was the 24th day of January, A. D. 1877, and the date of the charter issued to it is the 30th day of June, A. D. 1882."

Also the following language:

"All the powers of this body, pertaining to the welfare of said Ancient Order of United Workmen, that are enumerated herein, are subject to the supervisory control of said Supreme Lodge of the Ancient Order of United Workmen when in session, and of the executive officers thereof when the same is not in session."

The constitution of the Grand Lodge contains the following sections:

"Sec. 3. Its governing bodies are: (1) The 'Supreme Lodge of the Ancient Order of United Workmen,' which is a corporation duly created, organized and existing under and pursuant to the laws of the state of Texas, and which has general supervision and jurisdiction over the whole order, with such powers over the whole order, including this body, as may be from time to time set forth in its corporate charter, its constitution and general laws, and conformable to the law of the land. (2) Grand Lodges, of which this body is one, and which owe their existence to, and receive their power and authority as a part of said order, from charters severally issued to them by the Supreme Lodge of the Ancient Order of United Workmen aforesaid, and which Grand Lodges have supervision and control over the said order within certain territorial limits prescribed by the said Supreme Lodge of the Ancient Order of United Workmen, as may be from time to time set forth in the corporate charter, and the constitution and general laws of the said Supreme Lodge of the Ancient Order of United Workmen, and conformable to the law of the land."

"Sec. 6. Powers of This Grand Lodge. All the powers of this Grand Lodge pertaining to the welfare of said order, that are enumerated in this section, are subject to the supervisory control of said Supreme Lodge of the Ancient Order of United Workmen when in session, and of the executive officers thereof when the same is not in session."

In 1880 the Supreme Lodge, in order to protect each beneficiary jurisdiction of the order from exigencies which might arise, increasing its death rate to an extent which would make assessments for a time

oppressive upon its membership, established a fund known as the relief fund. In 1900 the law of the Supreme Lodge, establishing a relief fund, was amended and the name of the fund changed to guaranty fund. In 1903 the so-called relief law and guaranty fund was again amended by the Supreme Lodge. This amendment, so far as material, reads as follows:

"1. How Raised. Commencing with October 1st, 1903, there shall be raised the amount of one guaranty fund assessment with each beneficiary fund assessment (or a sum equal thereto in any other manner) upon each and every member of the Supreme Lodge beneficiary jurisdiction and all other jurisdictions, as per the following schedule of rates."

In 1906 the relief and guaranty fund law was again amended. This amendment, so far as material, reads as follows:

"In order to extend relief to the Supreme Lodge beneficiary jurisdiction and the Grand Lodge separate beneficiary jurisdiction for all claims arising under the provisions of the law relating to the guaranty fund enacted at the thirty-first stated meeting of the Supreme Lodge, up to and including September 30, 1906, a fraternal aid fund shall be raised, managed and disbursed as provided in these laws:

"1. How Raised. There shall be raised an amount equal to the sum of fifteen cents for each member of the order each and every month, commencing with the month of July, 1906. The amount so raised shall be due and payable to the Supreme Lodge by members of the Supreme Lodge beneficiary jurisdiction and by the Grand Lodge separate beneficiary jurisdictions on the first day of July, 1906, and on the first day of each succeeding month unless the same shall be a Sunday, in which case it shall be due and payable on the second day of the month, and must be paid on or before the last day of the month."

The law of the Supreme Lodge in regard to a per capita tax was as follows:

"Per Capita Tax. The assessments for revenue upon the Grand Lodges, to enable the Supreme Lodge to properly transact its business and to provide for the general welfare of the order, shall be the sum equal to twelve and one-half (12½) cents on each workman degree member in good standing under the jurisdiction of said Grand Lodges on June 30th, and a sum equal to twelve and one-half (12½) cents on each workman degree member in good standing under the jurisdiction of said Grand Lodges on December 31st of each year, and the same shall become due and payable on or before August first and March first of each year respectively."

Section 63 of the constitution of the Grand Lodge provided as follows:

"Revenue. Beneficiary Fund. There shall be a fund of this Grand Lodge known as its 'beneficiary fund.' All money in the beneficiary fund of this Grand Lodge when this section takes effect and is in force, together with such money as may thereafter be paid into the same for beneficiary assessments or arrearages upon reinstatement under the provisions of this constitution, shall constitute said beneficiary fund. And the beneficiary fund shall never be used for any other purpose than the payment of beneficiary certificates, for the payment of which this Grand Lodge is now, or hereafter shall become, liable, and the payment of guaranty fund assessments due and unpaid or that become unpaid or that become due by this Grand Lodge after this section takes effect, to the Supreme Lodge of the Ancient Order of United Workmen under its laws."

Sections 90, 91, and 96 of the constitution of the Grand Lodge provided as follows:

90. "Beneficiary Assessments. Whenever the committee on finance of this Grand Lodge, and the grand recorder thereof, are satisfied that the condition of the beneficiary fund of this Grand Lodge is such that all claims accrued or pending, that are subject to payment therefrom, cannot be promptly paid by this Grand Lodge, without the collection of one or more beneficiary assessments, the said committee and grand recorder shall levy upon all the members of said order who are subject to the jurisdiction and control of this Grand Lodge, one or more assessments as they may deem necessary for said beneficiary fund. (In the Constitution of 1908, this section 90 was renumbered 88.)"

91. "How Levied. To levy an assessment or assessments as provided for by section 90 of this constitution, it shall only be necessary for the committee on finance of this Grand Lodge and the grand recorder thereof to cause to be published in the official newspaper of this Grand Lodge, on or before the 8th day of any calendar month, a notice in substantially the following form, and bearing date the first day of such month, whereupon the levy of such assessment or assessments shall be deemed to have been made as of the first day of such month. The form of such notice shall be substantially as follows, that is to say:

"Notice of Assessment No. ...... (insert proper number or numbers), of 19.. (insert proper year).

"The Grand Lodge of the Ancient Order of United Workmen of the State of Minnesota: To All Members, Greeting:

"St. Paul, Minnesota, ...... (Insert Month) 1st, 19.. (Insert Year).

"Whereas, the committee on finance and the grand recorder of the Grand Lodge aforesaid are satisfied that the condition of the beneficiary fund of this Grand Lodge is such that all claims accrued or pending, that are subject to payment therefrom cannot be promptly paid by this Grand Lodge without the collection of (here insert number of assessments required) beneficiary assessment .......

"Now, therefore, you are hereby notified that beneficiary assessment ...... No......., for the year 19.., has (or have) been duly levied upon all members who are subject to the jurisdiction and control of the said Grand Lodge, and that the same must be paid to the proper officer on or before the last day of this month.

"Yours in C. H. & P.,

"(To be signed) · ....................

"....................

"....................

"[Grand Lodge Seal]                     Committee on Finance.

"....................

"Grand Recorder."

96. "Payment to Supreme Lodge Guaranty Fund. The amounts due from time to time from this Grand Lodge to the Supreme Lodge of the Ancient Order of United Workmen under the laws of the latter for its guaranty fund shall, as such amounts come due, be paid from the beneficiary fund of this Grand Lodge."

## In 1907 the Grand Lodge amended section 96 as follows:

"Amend section 96 of chapter xi of the Constitution by striking out wherever they appear the words 'guaranty fund' and insert in lieu thereof at each place the words 'fraternal aid fund,' so that when amended said section 96 will read as follows:

"Sec. 96. Payment to Supreme Lodge Fraternal Aid Fund. The amounts due from time to time from this Grand Lodge to the Supreme Lodge of the Ancient Order of United Workmen under the laws of the latter for its fraternal aid fund shall, as such amounts come due, be paid from the beneficiary fund of this Grand Lodge."

## The following appears in the record as a stipulation of fact:

"Upon the books of the defendant Grand Lodge there is charged against the beneficiary fund in August, 1909, $93,483.93 and in September, 1909, $2,-

531.24. Prior to February, 1908, the constitution and laws of the defendant Grand Lodge did not provide for any emergency fund. At its session in February, 1908, a change in the rate of assessments for the beneficiary fund was provided for and it was then provided that each member subject to the jurisdiction and control of the Grand Lodge and holder of a beneficiary certificate upon which the Grand Lodge is liable should, commencing on July 1, A. D. 1908, pay the new rate of assessments. In the same section it was also provided: 'It shall be the duty of the committee on finance of this Grand Lodge and of the grand recorder thereof, in addition to levying a sufficient number of assessments each year for the purposes of the beneficiary fund, as provided in section 88 of this constitution, to levy one such assessment each year for an emergency fund.' Section 88 referred to is section 90, Editions of Constitution and Laws published prior to 1908.

"On the 28th day of July, 1909, or shortly before, it came to the attention of the finance committee that there did not appear upon the books of the defendant Grand Lodge any account under the head 'Emergency Fund.' Thereupon, and on July 28, 1909, the finance committee passed a resolution as follows: 'Pursuant to the provisions of section 92 of the constitution of the Grand Lodge of the Ancient Order of United Workmen of the State of Minnesota (amended 1908), providing for an emergency fund of one assessment each year, it is hereby ordered that the proceeds of assessment No. 3, levied May 1st, 1909, amounting to $93,483.93, be and the same is hereby transferred from the beneficiary fund to the emergency fund of the Grand Lodge. It is further ordered that all moneys received on account of reinstatements of members suspended for the nonpayment of assessment No. 3 for the year 1909, be transferred from the beneficiary fund to the emergency fund of the Grand Lodge.' Pursuant to that resolution an account was opened upon the books of the Grand Lodge under the head 'Emergency Fund' and these two items of $93,-483.93, and $2,531.24, above mentioned transferred from the account shown on the books as beneficiary fund to this new account headed emergency fund. Commencing with the July, 1908, assessment, and prior to the levy of the May, 1909, assessment, there had been levied five assessments for the beneficiary fund."

"The said two items, which aggregated $96,015.17, were invested by the Grand Lodge in United States Bonds in September, 1909, pursuant to a resolution of the finance committee adopted September 9, 1909, as follows: 'Resolved that the grand recorder be authorized to draw a warrant against the surplus or emergency fund in favor of the Capital National Bank for ninety-six thousand, fifteen and $17/100$ dollars ($96,015.17) in payment of the bonds, United States government, four per cent. 1925, registered bonds, purchased by the loan committee."

Sections 114 and 61 of the constitution of the Grand Lodge read as follows:

"Sec. 114. Claims on General Fund. All expenses incurred in the management of this Grand Lodge, and the per capita tax due from time to time from this Grand Lodge to the Supreme Lodge of the Ancient Order of United Workmen under the laws of the latter shall, as the same become due, be paid from the general fund of this Grand Lodge upon warrants drawn and signed by the grand recorder, and also signed by the grand master workman."

"Sec. 61. Revenue General Fund. All money received by this Grand Lodge from all sources except that paid for beneficiary assessments or upon reinstatement, and all money in the general fund of this Grand Lodge when this section takes effect, shall be covered into a fund known as the 'General Fund.' "

Upon the face of this record we do not think it can be truthfully said that there was no guaranty or fraternal aid fund. It is true that there was no money assessed and collected under the name of a guaranty or fraternal aid fund, but this does not determine the liability of the Grand Lodge. The law of the Grand Lodge provided that the claims of the Supreme Lodge for guaranty fund or fraternal aid fund

should be paid from the beneficiary fund, so that every assessment that was made, and every dollar that was collected pursuant to the assessment for the beneficiary fund, though nominally for the beneficiary fund, was also assessed and collected to pay guaranty fund or fraternal aid claims. In other words, the beneficiary fund was charged by the law of the Grand Lodge with the payment of death claims and guaranty fund or fraternal aid claims. This law made the beneficiary fund in fact a guaranty fund or fraternal aid fund.

It charged a trust upon all moneys coming into the beneficiary fund for the payment of the guaranty and fraternal aid claims, and, in the event there was not a sufficient amount collected and covered into the beneficiary fund to pay the death claims and the claims against the fraternal aid and guaranty fund in full, the money should have been paid out proportionately. The proportion of payment being the same proportion which the total amount of valid claims against the guaranty or fraternal aid fund bore to the total amount of death claims.

In violation of this trust the officers of the Grand Lodge paid out substantially all the money in the beneficiary fund for death claims and refused to pay any claims against the guaranty or fraternal aid fund, after having paid these claims for years out of the beneficiary fund. Not only this, but the record shows that the officers of the Grand Lodge established an emergency fund by providing that one beneficial assessment should be levied each year for this fund. But, instead of levying the assessment, they took arbitrarily out of the beneficiary fund $96,015.17 and placed it in the emergency fund and invested the same in government 4 per cent. registered bonds. This amount, when thus arbitrarily taken out of the beneficiary fund, was charged with the payment of death claims and guaranty or fraternal aid claims, and said amount with its increase must be returned to the beneficiary fund and there subjected to the payment of valid claims of the Supreme Lodge against the guaranty or fraternal aid fund in the following manner: Since all death claims have been paid in full, the $96,015.17 and its increase must first be applied to the payment of the valid claims of the Supreme Lodge for guaranty fund or fraternal aid fund. If the amount of this $96,015.17 and its increase is sufficient to pay such claims in full, then the decree should be for the payment of the amount of these claims, and no farther accounting regarding the beneficiary fund will be necessary. If the amount so derived is insufficient to pay these claims in full, then the Supreme Lodge should recover in addition to an amount equal to the $96,015.17 and its income the amount which, after crediting the Grand Lodge with the payment of this $96,015.17 and its increase on its valid claims, will appear from an accounting to have been diverted from the beneficiary fund of the period between January 1, 1904, to February 28, 1911, and applied to the payment of death claims, when, taking into consideration the proportion of the amount of the death claims to the amount of the valid claims of the Supreme Lodge, it should have been applied to the payment of the valid claims of the latter.

In regard to the per capita tax, the record shows that this tax was not to be collected by the Grand Lodge, but was an indebtedness which the Grand Lodge was liable for and obliged to pay to the Supreme

Lodge at certain times, and under the law of the Grand Lodge was chargeable to the general fund.

This is an action for an accounting, and this court cannot enter into that, but in the accounting before the master the per capita tax can be considered, and the amount due the Supreme Lodge, if any, may be ascertained as a part of the accounting in regard to the guaranty or fraternal aid fund.

We have considered all objections to the right of the Supreme Lodge to recover, but all objections that we have not discussed bear upon the question of the amount of the recovery, and that question cannot be determined until an accounting is had.

The judgment of the trial court is reversed, and the cause remanded, with instructions to refer the cause to a master for the purpose of making an accounting under the principles of law, hereinbefore stated, and report the same to the court to be proceeded with as law and justice may require.